UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

TAMI D.,[1]

           Petitioner,

  vs.

KILOLO KIJAKAZI, Acting Commissioner
Of Social Security Administration,[2]

           Respondent.

Case No.  1:21-cv-00067-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Petitioner Tami D. brings this action under the Social Security Act ("the Act), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of

Social Security (the "Commissioner").  The Commissioner denied Petitioner's

application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI")

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure
5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and
Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil
Procedure 25(d).  Kijakazi became the Acting Commissioner of Social Security
Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

under Title II of the Act.  42 U.S.C. § 401 *et seq.*  For the following reasons, the Court will grant the Petition (Dkt. 1) and will remand the ALJ's decision for further proceedings.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter … a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 907 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or denial, [the court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific

quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d. 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Petitioner's Application

Petitioner alleges disability based on post-traumatic stress disorder and a concussion.  AR 269.[3]  At the time of her alleged onset date, she was 48 years of age.  AR 25.  She has a high school education and past relevant work experience as an administrative assistant, a front desk receptionist, a self-employed associate, and a self-employed craft business manager.  AR 25-26.

Petitioner protectively applied for Disability Insurance Benefits ("DIB") on November 13, 2018, alleging an onset date of September 30, 2018.  AR 13.  Her application was denied initially on February 6, 2019, and on reconsideration on May 30, 2019.  *Id.*  Petitioner next requested a hearing, which was held on July 28, 2020, before Administrative Law Judge ("ALJ") Michele M. Kelley.  AR 13, 27.  Petitioner appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), William Tysdal also testified.  AR 57-62.  On September 4, 2020, the ALJ issued a decision denying Petitioner's claim.  AR 13-27.  Petitioner requested Appeals Council review, which was denied on December 17, 2020.  AR 1-9.  Petitioner timely sought review before this Court.[4]

---

[3] Citations to "AR" are to the Administrative Record (Dkt. 12).
[4] The parties have consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636. (Dkt. 7).

**MEMORANDUM DECISION AND ORDER - 3**

## II.     The ALJ's Decision

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected… to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ determined that Petitioner had not engaged in substantial gainful activity after her alleged onset date of September 30, 2018.  AR 16.  Therefore, the ALJ continued with the sequential process.  *Id.*

At step two, the ALJ determined that Petitioner has the following severe impairments: "late effects injury to the nervous system, traumatic brain injury, neurocognitive disorder, anxiety, depression, and somatoform disorder."  AR 16.

At step three, the ALJ determined that Petitioner's impairments did not meet or medically equal the severity of a listed impairment.  AR 17-19.  The ALJ then assessed Petitioner's residual functional capacity ("RFC"), finding that Petitioner:

> [H]as the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as follows: The claimant is able to lift, carry, push or pull 10 pounds frequently and 20 pounds occasionally. She can walk and stand for about 6 hours in an 8-hour workday with normal breaks. She can sit for about 6 hours in an 8-hour workday with normal work breaks. The claimant can frequently climb ramps and stairs. She can frequently balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. The claimant must avoid even moderate exposure to vibrations. She must avoid all exposure to hazards including unprotected heights, unguarded machinery, and industrial vibrations. She must

avoid concentrated exposure to noise of greater than 3 out of 5 on the scale set forth in the Dictionary of Occupational Titles' companion publication The Selected Characteristics of Occupations. The claimant can understand, remember, and carry out simple tasks. She can maintain attention, concentration, persistence, and pace for such tasks for 8-hour workdays and 40-hour workweeks. She can tolerate occasional interactions with supervisors, coworkers and members of the public. She can tolerate usual simple work situations. She can tolerate only occasional changes in the routine work setting. She cannot work at a fixed fast pace or production rate but can engage in goal-oriented work. The claimant is not able to travel as part of her job duties.

AR 19.

At step four, the ALJ found that Petitioner could not perform her past relevant work.  AR 25.  But at step five—considering Petitioner's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Petitioner could perform, including work as a merchandise marker, office helper, or mail clerk.  AR 26-27.

## DISCUSSION

Petitioner contends that the ALJ committed four errors.  First, Petitioner contends that the ALJ improperly rejected Petitioner's subjective symptom testimony without offering clear and convincing reasons for doing so.  Pet.'s Open. Br. 7-12, Dkt. 13.  Second, Petitioner asserts that the ALJ improperly rejected medical opinions under the "supportability" and "consistency" standard.  *Id.* at 12-16.  Third, Petitioner argues that the ALJ improperly discounted lay witness testimony without offering a germane reason for doing so.  *Id.* at 16-18.  Finally, Petitioner contends that the ALJ erred in the RFC finding due to a lack of support in the record.  *Id.* at 18-20.  The Court finds that the ALJ committed legal error.  Accordingly, as more fully explained below, the Court identifies

**MEMORANDUM DECISION AND ORDER - 5**

the ALJ's material legal errors and will reverse the decision and remand the case for further proceedings.

## I.      Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony.  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  A two-step process is employed for evaluating a claimant's testimony about the severity and limiting effect of his symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of symptoms.  *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ can reject the claimant's testimony "only by offering specific, clear, and convincing reasons for doing so."  *Id.*  Thus, the ALJ must specifically identify the testimony that she does not credit and must explain what evidence undermines the testimony.  *Holohan*, 246 F.3d at 1208.  General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence.  *Id.*  To discredit a Petitioner's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  On review, an ALJ's findings must be "properly supported by

the record," and "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [symptoms]." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

At the administrative hearing before the ALJ, Petitioner testified that she stopped working full-time in 2016 after a car accident.  AR 42.  She stopped working in any capacity in September of 2018.  *Id.*  She indicated that, even with the significant accommodations provided by her previous employer, she could not continue to work due to brain fatigue and severe irritability.  AR 50-51.  After the car accident, she began to experience neck, back, and shoulder pain.  AR 42-43.   She articulated experiencing constant pain in her back, neck, and shoulders to some degree.  AR 43.  Further, she testified that, although she has previously received treatment for her back pain, she stopped receiving physical therapy due to limited household income.  AR 43- 44.

Also, as a result of the car accident, Petitioner testified to experiencing issues with her brain function, such as irritability, memory loss, brain fatigue, and difficulty with concentration, resulting from a traumatic brain injury and meningitis.  AR 44-45.  Since the accident, she requires "brain breaks" and naps to cope with overstimulation.  AR 45.  Specifically, Petitioner articulated that concentrating, thinking, reading, being on the computer, and other stimuli like light and noise trigger her need for brain breaks.  AR 45.  Petitioner estimated that she could focus and concentrate on reading, being the computer, or looking at paperwork for about 30 minutes before needing a "long break."  AR 45-46.  During her brain breaks, Petitioner takes about 15 to 20 minutes to shut her eyes and

typically falls asleep for about an hour. *Id.* Specifically, Petitioner testified that, the more mentally demanding a task is, the longer the brain break she needs. *Id.* Petitioner testified that, though she received treatment for PTSD and anxiety, she stopped receiving such treatment again due to limited as household income, as well as scheduling conflicts. AR 47-48.

Petitioner testified that noise is particularly triggering for her. For example, Petitioner articulated that, because she cannot handle extraneous noise, she can no longer listen to music, cannot have the windows down as she drives, and cannot go out to restaurants or movies. *Id.* She also testified that she can only have limited social gatherings and could not be around large groups of people because she cannot handle multiple conversations or noises. AR 46-47. Further, Petitioner testified that she had to move back to her small hometown of about 3,000 people in order to "quiet [her] life down." AR 47.

Petitioner testified that she could complete some of her daily activities, such as cleaning the dishes, folding laundry, and going to the grocery store. AR 48-49. She estimated that she could stand and do the dishes for about 20 to 30 minutes before needing a break or stretching. AR 48. Petitioner stated that she has to go grocery shopping when she is "fresh," meaning that she needs to adequately rest beforehand due to the overstimulation. AR 49. Further, she articulated that, due to the noises and visual stimuli at the store, she becomes very fatigued and experiences imbalance. *Id.* Specifically, she describes feeling like she is "on a floating boat" and like she could fall over. *Id.* Other activities, such as climbing, walking a city block, and bending over to

unload the dishwasher, cause Petitioner to lose her balance.  AR 49-50.  She testified that she can no longer vacuum due to the pain she suffers while doing so.  *Id.*

At the first step, the ALJ found that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 19.  However, in applying the second step, the ALJ concluded that Petitioner's testimony about "the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id.*

Petitioner asserts that the ALJ erred in rejecting Petitioner's testimony because the ALJ failed to articulate specific, clear, and convincing findings in doing so.  Pet.'s Open. Br. 7.  Specifically, Petitioner contends that the ALJ did not provide clear and convincing reasons for concluding that the symptoms and limitations that Petitioner testified to do not exist.  *Id.*

In response, the Commissioner asserts that the ALJ properly rejected Petitioner's subjective symptom testimony for three reasons: (1) the testimony contradicted her purported improvement with medication and treatment; (2) the testimony contradicted the objective medical evidence; and (3) the testimony contradicted her reported daily activities.  The Court will address each reason in turn below.

A. *Improvement with Treatment*

First, the ALJ noted that Petitioner reported "doing better with her symptoms with medication management and mental health counseling."  AR 21; *see also* Def.'s Resp. Br. 5, Dkt. 14.  Specifically, the Commissioner asserts that Petitioner "told her neurologist that medication has helped considerably and seeing a counselor was helpful."

Def.'s Resp. Br. 5 (citing AR 917).  "Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  Symptoms may wax and wane during the progression of a mental disorder. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Those symptoms, however, may also subside during treatment. "With adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders." 20 C.F.R. pt. 404, subpt. P, app. 1 (2014).

Here, Petitioner has multiple diagnoses concerning her pain and brain fatigue complaints, including late effects injury to the nervous system, traumatic brain injury, neurocognitive disorder, anxiety, depression, and somatoform disorder.  AR 16.  The medical records show that Petitioner had reported on one occasion in September 2019 to Dr. McCarthy that her medications, such as Flexeril, Lexapro, and Nuvigil, were helpful in alleviating her symptoms.  AR 917, 928.   Dr. McCarthy noted that, though the Lexapro "help[s] a bit," "she [was] not where she once was." AR 928.  He also prescribed Petitioner Nuvigil to aid with the symptoms stemming from the traumatic brain injury, such as neck pain, anxiety, difficulty with mobility, and short-term memory loss.  AR 917, 928.  However, such medication can only be used on certain days, and although the medication considerably helped Petitioner, she could not use it very often. AR 917, 928.

**MEMORANDUM DECISION AND ORDER - 10**

Despite Dr. McCarthy's record, the Court is mindful that "[r]eports of 'improvement'" must be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). Therefore, when considering the record as a whole, and although the ALJ was entitled to rely on evidence of treatment to discount subjective symptom testimony, the ALJ failed to articulate substantial evidence that Petitioner's improvement with treatment contradicts her subjective symptom testimony.

B. *Objective Medical Records*

The Commissioner next cites examination records in defense of the ALJ's decision.  Def.'s Resp. Br. 4.  An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Here, despite Petitioner testifying that she stopped working due to her impairments, the ALJ found that the objective medical evidence did not suggest the severity of the symptoms that Petitioner alleged.  AR 20-22.

In reference to the alleged experiences of imbalance, that ALJ noted that physical examinations showed she had no postural instability and normal gait, with good heel-to-toe and tandem walking, and normal coordination.  AR 24 (citing AR 881, 919, 810, 854, 935).  The ALJ also concluded that, despite her allegations of disabling deficits in concentration and memory, mental status examinations showed Petitioner was alert and oriented, with good concentration, memory, and judgment, and normal thought content,

**MEMORANDUM DECISION AND ORDER - 11**

cognition, speech, and behavior.  AR 24 (citing AR 623-24, 629, 863, 952).  Therefore, the ALJ concluded that these objective medical findings undermined Petitioner's subjective symptom allegations, and instead supported her ability to engage in light work at the unskilled level.  AR 21.  However, when considering the record as a whole, there was not substantial evidence that Petitioner's symptom allegations were inconsistent with the objective medical evidence found in the treatment records.

The ALJ failed to address the inconsistencies between Petitioner's subjective symptom testimony and the findings of LCPC Harris and NP Galloway.  The Commissioner argues that Dr. McCarthy's findings do not support Petitioner's symptom allegations, because the doctor "only found she had a 'mildly' impaired ability to maintain and concentrate, and simply stated her memory was 'adversely affected,' without any indication of the degree to which it was 'affected.'"  Def.'s Resp. Br. 4 (citing AR 930- 31); *see also* AR 21.  However, the ALJ also noted abnormal objective medical complaints when Petitioner was tearful upon examination by NP Galloway, when she was noted to have poor recent memory by LCPC Harris, and when Dr. McCarthy found Petitioner to have an "impaired memory."  AR 21.  Further, although the ALJ noted that Petitioner had a long history of a traumatic brain injury from a motor vehicle accident in December 2016 and acknowledged the March 2017 MRI of the brain showing hyperintensities, the ALJ failed to adequately explain why these records were significant.  AR 20.  Neither the ALJ nor Respondent explained how these findings were inconsistent with any of Petitioner's allegations.  AR 21.

**MEMORANDUM DECISION AND ORDER - 12**

The Commissioner also contends that Petitioner's reliance on *Ghanim v. Colvin*, 763 F.3d 1154 (9th Cir. 2014), is misplaced.  Def.'s Resp. Br. 5.  The Commissioner contends that the court in *Ghanim* rejected the ALJ's reliance on observations of cognitive functioning, such as good eye contact, organized and logical thought content, focused attention, because such physical manifestations did not contradict allegations of depression and social anxiety.  *Id.* (citing *Ghanim*, 763 F.3d at 1164).  Therefore, the Commissioner claims that, because Petitioner alleged that she had deficits in concentration, memory, and cognitive functioning contradict, AR 44-46, the findings cited by the ALJ were relevant to and inconsistent with her allegations relating to her post-concussive disorder and traumatic brain injury.  Def.'s Resp. Br. 5.

Contrary to the Commissioner's argument, however, the central holding of *Ghanim* renders the specific symptomology irrelevant to an analysis of the ALJ's conclusions in light of the clear and convincing standard.  Rather, the holding in *Ghanim* articulates that the treatment records must be viewed in light of the overall diagnostic record, such that, in spite of some improvement in the manifestation of symptoms, a claimant can still significantly suffer from their overall diagnosis.  Further, in the District of Oregon*,* the court found that observations of cognitive functioning, like adequate eye contact and clear speech, did not contradict the subjective allegations of several other severe mental impairments, such as schizophrenia and borderline intellectual functioning. *Jeremy Q.  v. Comm'r, Soc. Sec. Admin.*, 6:19-cv-00383-MK, 2020 WL 2922180 (D. Or. June 3, 2020).  Therefore, regardless of whether the symptoms at dispute in *Ghanim* were identical to the present matter, *Ghanim*'s ruling that an ALJ's simple recitation or

**MEMORANDUM DECISION AND ORDER - 13**

parroting of the medical records is insufficient to undermine Petitioner's subjective complaint still holds in this context. *See also Jeremy Q. v. Comm'r, Soc. Sec. Admin.*, 6:19-cv-00383-MK, 2020 WL 2922180 (D. Or. June 3, 2020). The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. *Brown v. Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Contrary to the holdings in *Ghanim* and *Quaite*, the ALJ here failed to compare Petitioner's symptom testimony with the objective medical evidence beyond mere recitation of characterizations of Petitioner's demeanor, nor did the ALJ specify whether the medical evidence refuted or supported Petitioner's statements.

## C. Activities

Finally, the Commissioner asserts that the ALJ properly rejected Petitioner's testimony based on her daily activities. Def.'s Resp. Br. 6  Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities "contradict [her] other testimony;" or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *See Orn*, 495 F.3d at 639.

Here, there is insufficient evidence supporting the ALJ's conclusion that Petitioner's admitted daily activities were "transferable" to a work setting and proof that Petitioner spent a "substantial" part of her day engaged in transferable skills. *See Fair*, 885 F.2d at 603. Commissioner's assertion fails for at least two reasons. First, the ALJ did not actually reject Petitioner's testimony on this rationale. Rather, the ALJ's decision simply summarized Petitioner's testimony and concluded that her "activities of daily living do not support her subjective limitations." AR 22. Courts may not affirm an

**MEMORANDUM DECISION AND ORDER - 14**

ALJ's decision based on a post hoc reasoning supplied by the Commissioner.  *Bray v.*
*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing
principles of administrative law require us to review the ALJ's decision based on the
reasoning and factual findings offered by the ALJ—not post hoc rationalizations that
attempt to intuit what the adjudicator may have been thinking.").

Second, even if the Court were to consider the Commissioner's argument on the
merits, the ALJ's summary of Petitioner's daily activities failed to explain "what
symptom testimony [was] not credible and what facts in the record lead to that
conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *see also Dodrill v.*
*Shalala*, 12 F.3d 915, 918 (9th Cir.1993).  Although the ALJ discerned that the Petitioner
engaged in a broad range of activities during the period under consideration, the ALJ
failed to articulate how these daily activities were "transferable" to a work setting, and
that Petitioner spent a "substantial" portion of the day engaged in transferable skills.  AR
22; *see also Fair*, 885 F.2d at 603.  Given Petitioner's reported daily activities, there was
not substantial evidence to support the ALJ's finding that Petitioner can engage in "light
work."  Light work involves walking and standing for about 6 hours throughout the
workday with normal breaks, sitting for about 6 hours of the workday, frequently
climbing ramps and stairs, and frequently balancing or kneeling, and maintaining
attention and concentration throughout the workday.  AR 19.  Although Petitioner
engages in various daily activities, the ALJ's mere listing of the daily activities
mischaracterizes Petitioner's reality in completing her daily tasks.  Although Petitioner
identified daily activities such as cleaning, paying the bills, crafting, and reading, the ALJ

failed to address the frequent "brain breaks" and absence of visual and auditory stimulation required for Petitioner to complete these activities.  Therefore, even if the Petitioner's reported daily activities involve many of the same physical tasks as a merchandise marker, office helper, or mail clerk at face value, the ALJ's conclusion failed to demonstrate how Petitioner could spend a "substantial" portion of the day engaged in transferable skills.  Thus, when considering the record as a whole, substantial evidence does not support the conclusion that Petitioner's daily activities were "transferable" to a light work setting.  As repeatedly observed, an "ALJ's mere recitation of a claimant's activities is insufficient to support the rejection of the claimant's testimony as a matter of law."  *David J. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00647-MK, 2021 WL 3509716, at *4 (D. Or. Aug. 10, 2021) (citation omitted).  Therefore, Petitioner's activities of daily living were not a clear and convincing reason to reject her symptom testimony.

## II.    Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)); *see also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Lay testimony is competent evidence and cannot be disregarded without comment. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *Molina*, 674 F.3d at 1114; *Stout*, 454 F.3d at 1053 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)).  To discount lay witness testimony, the ALJ

must give reasons germane to each witness. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018).

### A.     *Petitioner's Husband*

Petitioner asserts that the ALJ erred by omitting germane reasons for rejecting and discounting the lay witness testimony provided by Petitioner's husband.  Pet.'s Open. Br. 18.  Further, Petitioner argues that the ALJ erroneously relied on § 404.1520(c).  The Court agrees.  "Section 404.1520(c) states how the Commissioner 'will consider and articulate medical opinions and prior administrative medical findings' for claims after March 27, 2017 and describes factors to be considered when evaluating medical opinions.  Although § 404.1520c(d) states the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements."  *Joseph M. R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779-BR (D. Or. 2019).  Therefore, the ALJ erroneously relied on Section 404.1520(c) and failed to provide germane and specific reasons for rejecting and discounting the testimony of Petitioner's husband.

### B.  *Discovery Church*

Petitioner also contends that, because the ALJ did not explicitly reject, or even address, the work history questionnaire for inconsistency with Petitioner's testimony, the ALJ discounted lay witness statements without providing a germane reason for doing so.  Pet.'s Open. Br. 17.  Again, the Court agrees.

**MEMORANDUM DECISION AND ORDER - 17**

A work activity questionnaire is lay witness testimony that the ALJ must address. *Gray v. Astrue*, 2012 WL 4097762, at *9 (D. Idaho Sept. 17, 2012); *Smiggs v. Astrue*, 2011 WL 4544052, at *6 (D. Or. Sept. 28, 2011) (it was legal error for the ALJ to not address a work activity questionnaire that stated Petitioner was only 70% as productive as other employees).

Here, the questionnaire was submitted by Melisa Pearson on behalf of the Discovery Church, Petitioner's employer from April 2011 to September 2018.  AR 198-199.  Ms. Pearson's testimony addressed Petitioner's work limitations and included numerical and explanatory assessments of Petitioner's workplace productivity.  *Id.*  If the ALJ rejected the answers to the questionnaire, the ALJ was required to give specific and germane reasons; if she accepted at least some of the testimony, the ALJ was obliged to explain the evidentiary weight she was gave to it.  *Stout*, 454 F.3d at 1053. The questionnaire is lay testimony that the ALJ should have addressed.

ALJs are obliged to comment on work activity questionnaires because they include information about a claimant's ability to work. *Chapman v. Colvin*, 668 F.App'x 720, 720. (9th Cir. 2016) (citing *Tobeler v. Colvin*, 749 F.3d 830, 833–34 (9th Cir. 2014); *Stout*, 454 F.3d at 1053).  District court cases within the Ninth Circuit have also concluded that work activity questionnaires must be addressed just like other testimony from lay witnesses. See, e.g., *Gray*, 2012 WL 4097762, at *9; *Smiggs*, 2011 WL 4544052, at *6.

The Court finds there is no indication in the ALJ's decision that the questionnaire was considered. Although the Commissioner argues that the ALJ considered this

evidence because it was part of the work history record considered by both Dr. Sanford and the vocational expert, this is insufficient. There are no germane reasons articulated for either the ALJ's acceptance or rejection of the evidence. *See, e.g., Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 684, 694 (9th Cir. 2009). There is also no indication in the opinion that the ALJ weighed or explained the questionnaire's role in her ultimate determination. Even when an ALJ generally discusses a work activity questionnaire in assessing a claimant's credibility, some courts have found that an ALJ erred when she failed to explain the weight given to it—which is more than can be said about the questionnaire being entirely absent from the ALJ's decision here. *See, e.g., Gray*, 2012 WL 4097762, at *9. Further, the ALJ's failure to address the questionnaire is compounded by the fact that the vocational expert testified that workers having a productivity deficit similar to Petitioner's would not be able to sustain unskilled full-time employment, even with respect to the jobs identified by the vocational expert in response to the ALJ's hypothetical. *See* AR 60-61.

When an ALJ fails to properly comment on lay witness testimony, the reviewing court must determine if the error is harmless—"inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (citations and internal quotation marks omitted). Harmless legal errors are not grounds for reversal. *Burch*, 400 F.3d at 679. However, a reviewing court cannot consider an error harmless, "unless it can confidently conclude that no reasonable ALJ… could have reached a different conclusion." *Stout*, 454 F.3d at 1056.

**MEMORANDUM DECISION AND ORDER - 19**

Here, the Court finds that the error was harmful.  The questionnaire indicates that Petitioner receives significant accommodations at work and is much less productive than her similarly situated peers.  AR 198-99.  The questionnaire also indicates that Petitioner requires extra supervision and reminding of her current task.  The very purpose of lay testimony from a claimant's employer is to gain greater insight into how a claimant's limitations are affecting her ability to work.  *See* SSR 06-03p, available at 2006 WL 2263437, at *2 (stating that lay testimony may provide information "based on a special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").  A reasonable ALJ could conclude that properly crediting the questionnaire would require a different RFC determination and different hypotheticals to the VE, because the questionnaire provides important information about how the claimant's limitations are affecting his ability to work.

In her RFC determination, the ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *See* SSR 96-8p, available at 1996 WL 374184, at *5; *accord* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Moreover, SSR 96-8p directs that "[c]areful consideration" be given to any evidence about symptoms "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone."  *See* SSR 96-8p, available at 1996 WL 374184, at *5.  When giving such consideration, if the record establishes the existence of a medically

determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. *See* SSR 96–7p, available at 1996 WL 374186, at *1; 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). Additionally, although the ALJ is required to include only those limitations which are supported by substantial evidence in the vocational expert hypotheticals, *see Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001), she is not free to ignore properly supported limitations, including symptom testimony provided by a lay witness. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).

Here, the questionnaire submitted by Ms. Pearson indicates that Petitioner is not as productive as her coworkers and is unable to complete all of the job duties without special assistance because one or more of the medical issues limits her productivity. *See* AR 198-99. In short, she has a limitation. Assuming the ALJ accepted the questionnaire's productivity limitation, her failure to include that limitation in the RFC and the hypotheticals to the VE harmful error.

### III.    Medical Opinion Evidence

For claims filed on or after March 27, 2017, the revised regulations apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*"Revisions to Rules"*), 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017). Under these regulations, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and

**MEMORANDUM DECISION AND ORDER - 21**

evaluate each medial opinion's persuasiveness using factors.  *Id.*  The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The ALJ must articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions… in [his or her] decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions… will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s)… will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ is not required to explain how she considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical.  *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).  Moreover, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis has the support of substantial evidence.  *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remains binding on this Court.  For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion.  *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 22**

2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment").  Nor may the ALJ dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his own conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, the ALJ must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

A.    *Andrew McCarthy, M.D.*

Petitioner only challenges the ALJ's assessment of the opinion of Andrew McCarthy, M.D.  Pet.' s Open. Br. 12-16.  Dr. McCarthy served as Petitioner's treating

**MEMORANDUM DECISION AND ORDER - 23**

neurologist and opined that Petitioner's TBI-related impairments would "affect [Petitioner's] ability to work 8 hours a day, 5 days per week."  AR 987.

The ALJ found the opinion unpersuasive for four reasons: (1) "the issue as to whether a claimant is able to engage in any work activity goes to the ultimate issue reserved for the Commissioner;" (2) the opinion of Petitioner's postural, sensory, and manipulative limitations was not supported by his physical examination findings; and (3) the opinion was "inconsistent with the opinion of Dr. Vestal;" and (4) the opinion was inconsistent with Petitioner's "broad range of activities of daily living."   AR 24.

In support of the conclusion that Dr. McCarthy erroneously concluded that Petitioner was unable to work, the ALJ cited a single assessment completed in response to a Social Security claim inquiry.  In the assessment, Dr. McCarthy answered "0" and "no work" in response to the question: "In your medical opinion, how many hours can your patient regularly work in day?"  Facially, there is some tension between Dr. McCarthy's assessment and the Commissioner's role as the ultimate finder of whether a claimant can engage in work activity.  Viewed in context, however, any conclusion of Petitioner's ability to engage in work was immaterial as Dr. McCarthy's assessment was merely responsive to the questions supplied by the inquiry.

As to the ALJ's second reason, the ALJ failed to adequately explain how a lack of specific physical functional limitations related to the supportability and consistency of Dr. McCarthy's opinion, as required by the regulations.  In other words, the ALJ failed to identify how the relevant findings undermined Dr. McCarthy's opinion.  Further, even though the lack of physical limitations exhibited by Petitioner seems to indicate that

**MEMORANDUM DECISION AND ORDER - 24**

Petitioner can engage in light work, the ability to physically engage in light work is immaterial to evaluating Petitioner's limitations in light of her post-concussive symptoms.

For example, during the same September 2019 appointment cited by the ALJ, Dr. McCarthy noted that Petitioner's "affect and mood were adversely affected," as well as her "immediate recall [and] recent and remote memory."  AR 930.  As such, the treatment notes regarding motor and sensory limitations cited by the ALJ were not sufficient to justify rejecting Dr. McCarthy's opinion in regard to Petitioner's TBI and post-concussive symptoms.

As to the ALJ's third reason, the ALJ erred by not explaining how Dr. Vestal's opinion differed or undermined the opinion of Dr. McCarthy.  Simply stating that a medical opinion is generally inconsistent with another medical opinion, without specifically discussing the inconsistency of such findings with the rest of the record, does not make it so.  *Jones v. Comm'r of Soc. Sec. Admin.*, 1:19-cv-00109-REB (D. Idaho 2020).

Finally, the ALJ failed to support the conclusion that Petitioner's activities of daily living were inconsistent with Dr. McCarthy's opinion.  Further, as previously noted, the ALJ erred in considering the full context of Petitioner's daily activities and her need for brain breaks.  Accordingly, the ALJ failed to address the consistency and supportability of Dr. McCarthy's opinion with regard to either Dr. Vestal's opinion or Petitioner's daily activities. *Corpuz v. Saul*, 2:19- cv-02401 AC (E.D. Cal. 2021) (unsupported and

**MEMORANDUM DECISION AND ORDER - 25**

conclusory statements are insufficient).  In this regard, the ALJ erred, and this action

must be remanded.

## IV.    Remand

A reviewing court has discretion to remand an action for further proceedings or for

a finding of disability and an award of benefits.  *See, e.g., Stone v. Heckler*, 761 F.2d 530,

533 (9th Cir. 1985).  Whether an action is remanded for an award of benefits or for

further proceedings depends on the likely utility of additional proceedings.  *Harman v.*

*Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  In determining whether an award of benefits

is warranted, the court conducts the "three-part credit-as-true" analysis.  *Garrison*, 759

F.3d at 1020.  Under this analysis the court considers whether: (1) the ALJ has failed to

provide legally sufficient reasons for rejecting evidence; (2) the record has been fully

developed and further proceedings would serve no useful purpose; and (3) if the

improperly discredited evidence were credited as true, the ALJ would be required to find

the claimant disabled on remand.  *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir.

2015).  Even if all the requisites are met, however, the court may still remand for further

proceedings "when the record as a whole creates serious doubt as to whether the claimant

is, in fact, disabled[.]"  *Garrison*, 759 F.3d at 1021.  "Serious doubt" can arise when there

are "inconsistencies between the claimant's testimony and the medical evidence," or if the

Commissioner "has pointed to evidence in the record the ALJ overlooked and explained

how that evidence casts serious doubt" on whether the claimant is disabled under the Act.

*Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir.

2014)) (internal quotations omitted).

**MEMORANDUM DECISION AND ORDER - 26**

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ erred in her rejection of Petitioner's subjective symptom testimony and her assessment of Dr. McCarthy's opinions.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted).  Here, the Court finds the record sufficiently ambiguous, making remanding for an immediate payment of benefits inappropriate.  Accordingly, this case will be remanded for further administrative proceedings to: (1) conduct a de novo review of the medical opinion evidence; (2) obtain additional VE testimony based on a reformulated RFC; and (3) conduct any further necessary proceedings. *See Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014).

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court will reverse the Commissioner's decision.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

1.  The Petition for Review (Dkt. 1) is GRANTED.

2.  This matter is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

**MEMORANDUM DECISION AND ORDER - 27**

3.  This Remand shall be considered a "sentence four remand," consistent with 42

U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 13, 2022

Honorable Candy W. Dale
United States Magistrate Judge